**STATE of Missouri, Respondent,**

v.

**William H. CALVERT, Appellant.**

**William H. CALVERT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 46415, WD 47899.**

Missouri Court of Appeals,
Western District.

April 5, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Emmett D. Queener, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., C.J., and KENNEDY and HANNA, JJ.

HANNA, Judge.

The defendant, William Calvert, was charged in the Circuit Court of Boone County, Missouri, with three counts of forcible sodomy, § 566.060, RSMo Supp.1993. The jury found the defendant guilty and the court sentenced him as a prior and persistent offender to twenty-five years imprisonment on each count, to be served consecutively. The defendant filed a Rule 29.15 motion which was denied following an evidentiary hearing. Notices of appeal were filed from the criminal conviction and the denial of the post-conviction motion and they have been consolidated here.

The defendant does not challenge the sufficiency of the evidence to support the conviction. The evidence, viewed in the light most favorable to the verdict is as follows. The victim in this case was the defendant's fourteen-year old stepson. The defendant married the victim's mother when the victim was approximately six years old and moved into the family home with the mother and her two children.

In December of 1990, the victim was removed from the home for behavioral problems and was placed by the Division of Family Services (DFS) at the "Front Door," a home for juveniles. Starting in January of 1991, the victim was allowed to have unsupervised home visits on weekends. On three separate occasions between January and June of 1991, the defendant orally and anally sodomized the victim during his home visits. The home visits were discontinued in June 1991.

In November 1991, the victim reported the incidents first to a friend, then to a Front Door employee, and finally to his DFS caseworker, who made a hotline call. A physical examination of the victim revealed scarring consistent with sexual abuse. The defendant was charged with sodomy and remained incarcerated, unable to make bond. The defendant asked the mother to try to get the victim to change his story, promising that once released from jail he would sober up, get a job and change his behavior. The mother then took the victim from school and asked him to write a note to the defendant's counsel recanting the charges. The victim wrote the note and mother delivered it to defendant's counsel. Later, the mother again removed the victim from school and brought him to defense counsel's office where the victim made a taped statement recanting the charges.

When the prosecution learned of the victim's recantation of the charges, they interviewed the victim in an attempt to determine the truth of the matter. In that interview, the victim first recanted all the allegations, just as he had to defense counsel. However, when confronted with the details of one of the sexual assaults, he admitted that the incident did occur. Later, he reinstated all three charges. He explained that he had recanted the charges because his mother made him feel guilty for keeping the defendant in jail away from her and the family.

In his first point, the defendant argues that the trial court abused its discretion in quashing the defendant's subpoena of assistant prosecuting attorney Mary Browning, and that he was therefore denied his constitutional right to compulsory process to compel the attendance of witnesses on his own behalf. The defendant claims that Ms. Browning's testimony should have been compelled in order to impeach the victim's credibility.

Shortly after the defendant's counsel notified the prosecutor's office that the victim had recanted his accusations, Ms. Browning made arrangements to have the victim brought to the office. The victim was interviewed by Timothy Wynes, another prosecutor assigned to the case, with Ms. Browning present. Initially, the victim said that the charges he had made were false. When confronted with particular details he had previously provided about one of the assaults, the victim admitted that that allegation was true.

At trial, the victim stated that he did not remember telling Ms. Browning that one of the crimes charged had occurred, but that the other two were false. The defendant subpoenaed Ms. Browning in an attempt to elicit testimony concerning the interview with the victim in order to impeach the credibility of the victim. The court granted the state's motion to quash the subpoena.

■ The right to compulsory process is not an absolute right. *Alexander v. State,* 864 S.W.2d 354, 359 (Mo.App.1993) (*citing United States v. Macklin,* 902 F.2d 1320, 1329 (8th Cir.1990), *cert. denied,* 498 U.S. 1031, 111 S.Ct. 689, 112 L.Ed.2d 680 (1991)). In order to prove a violation of this right, the defendant must show that the testimony of the witness sought would be both material and favorable. *Id.* Additionally, if the testimony of the witness would be repetitive or cumulative, the trial court is within its discretion to quash the subpoena. *Id.*

The testimony which the defendant sought to elicit from Ms. Browning was cumulative. The fact that the victim had only reinstated one charge during the interview with prosecutors was brought out in the testimony of Rick Blakemore. Further, numerous witnesses testified, both on direct and cross, that the victim had recanted the allegations in their presence at one time or another. Given the cumulative nature of the proffered testimony and the fact that the witness subpoenaed was one of the prosecuting attorneys handling the case, and the one who had prepared the child victim to testify at trial, we do not find that the trial court abused its discretion in quashing the subpoena. Point denied.

■ In his second point, the defendant argues that the trial court abused its discretion in quashing the subpoena for Ms. Browning and in denying his motion for new trial because the state withheld exculpatory evidence, thereby preventing the defendant from impeaching the victim's testimony at trial. The defendant claims that Ms. Browning wrongfully failed to disclose inconsistent statements made by the victim during an interview with prosecutors.

In a criminal case, the prosecution has an affirmative duty to disclose exculpatory evidence. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). The state must turn over any information in its possession that is both favorable to the defendant and material to guilt or punishment. *Pennsylvania v. Richie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40, (1987); *see also State v. Robinson,* 835 S.W.2d 303, 306 (Mo. banc 1992).

However, the state cannot be faulted for nondisclosure if the defendant had knowledge of the evidence at the time of trial. *State v. Jackson,* 780 S.W.2d 114, 115 (Mo. App.1989). The defendant's counsel learned of the inconsistent statement from documents he received from DFS and the Front Door. Counsel's prior knowledge is demonstrated by his attempts to secure the evidence for trial first through Mr. Wynes, and later through Ms. Browning. The fact that he could not present the evidence at trial via the testimony of Ms. Browning was not due to the state's nondisclosure of the information, but rather was for reasons already discussed above. In any event, the evidence was fully disclosed to defendant's counsel and to the jury through Mr. Blakemore's testimony.

Further, the defendant claims that the state "engaged in an affirmative course of action to suppress that evidence. . . ." The record before us does not support the defendant's accusations of bad faith on the part of the prosecutors in this case. We are unable to discern any prejudice to the defendant as a result of the above-described incident. *See State v. Fraction,* 782 S.W.2d 764, 769 (Mo. App.1989). Point denied.

■ In his next point, the defendant claims that the trial court erred in allowing defense witness Bonnie Wise to testify during cross examination that it is not unusual for sexually abused children to recant their allegations. He argues that such testimony was impermissible comment of the victim's credibility and, therefore, invaded the province of the jury.

During the presentation of the state's case, Dr. Solomon had testified that during a physical examination, the victim told her that a scar on his forehead was caused by the defendant punching him. In order to impeach the victim's credibility on this issue, the defense called Ms. Wise, who testified that the victim had told her that he got the scar after running into a pole.

On cross-examination, the state questioned Ms. Wise about her qualifications and training. Ms. Wise, before working at DFS for five years, had been a detective at the Boone County Sheriff's Department for four years. She specialized in investigating child abuse and neglect cases, and had in the past interviewed over a thousand victims of sexual abuse. On that basis, the court allowed Ms. Wise to testify that it was not unusual for child victims of sexual abuse to recant their allegations or to delay reporting them. She further stated that such behavior may be caused by guilt, pressure from family members and fear of physical abuse. The defense now argues that this testimony was impermissible comment on the victim's credibility and invaded the province of the jury.

■ Determination as to the relevancy and admissibility of expert testimony is within the sound discretion of the trial court. *State v. Taylor,* 663 S.W.2d 235, 239 (Mo. banc 1984). Generally, expert opinion testimony is not admissible as it relates to credibility of witnesses. *State v. Williams,* 858 S.W.2d 796, 798 (Mo.App.1993). Expert testimony is admissible when it is clear that the jurors themselves are not able to draw correct conclusions from the facts proved because they lack experience or knowledge of the subject matter. *Taylor,* 663 S.W.2d at 239.

■ While an expert witness is not allowed to proffer an opinion regarding a particular witness's credibility, general profile evidence of the behavior of child sexual abuse victims can be a proper topic of expert testimony. *Williams,* 858 S.W.2d at 798–99. General profile evidence has been accepted to explain victim behavior that might appear unusual to a lay juror who is unfamiliar with the behavioral characteristics of child victims of sexual abuse. *Id.* at 799. In this case, Ms. Wise testified that it is common for sexually abused children to delay in reporting the incidents and to recant their allegations. This testimony was admissible to help explain the victim's behavior so the jury may better evaluate and weigh the victim's testimony. Point denied.

■ The defendant's final point is directed to his Rule 29.15 motion. He claims that his trial counsel was ineffective in calling Ms. Wise to impeach the victim's statement regarding the cause of the scar on his forehead, and that he was prejudiced by her cross examination testimony describing behavioral characteristics of sexually abused children. Since the information which could have impeached the victim was also available in a DFS report written by Ms. Wise, the argument continues, she should not have been called to testify. The trial court, following an evidentiary hearing, denied the defendant's motion finding that the decision to call Ms. Wise to testify was a matter of trial strategy.

■ On review, we are limited to determining whether the trial court's findings are clearly erroneous. Rule 29.15(j). The selection of witnesses and the introduction of evidence are matters of trial strategy and generally not a basis for a finding of ineffective assistance of counsel. *State v. Camden,* 837 S.W.2d 520, 524 (Mo.App.1992). At the evidentiary hearing, the defendant's trial counsel testified that his strategy at trial was to impeach the victim by introducing a pattern of lies and inconsistent statements. We cannot say that this was an unreasonable trial strategy, or that counsel's failure to anticipate Ms. Wise's cross-examination testimony was below the skill and diligence of a reasonably competent attorney. The denial of de-

fendant's motion was not clearly erroneous. Point denied.

Judgment of convictions on the three counts of sodomy and denial of Rule 29.15 motion are affirmed.

All concur.