**Ruthmary ANDERSON, et al., Appellants,**

v.

**Rozella Lee WITTMEYER,
et al., Respondents.**

**No. WD 48065.**

Missouri Court of Appeals,
Western District.

Feb. 28, 1995.

Rehearing Denied May 2, 1995.

James P. Moroney, Kansas City, for appellants.

Jeffrey S. Bay, Guy A. Magruder, Jr., Van Osdol, Magruder, Erickson and Redmond, P.C., Kansas City, for respondents.

Before LOWENSTEIN, P.J., and HANNA and ULRICH, JJ.

LOWENSTEIN, Presiding Judge.

This is an appeal from a jury trial contesting the validity of a putative will executed shortly before the decedent, John Cogswell's (Cogswell) death. Cogswell was admitted to the hospital July 27, 1990, executed the contested will on July 28, 1990, and died July 31, 1990 at the age of 89.

The facts relevant to this appeal are as follows: Cogswell was married to his second wife for almost 50 years. She predeceased him by approximately two months. Although he had no children from this marriage, he had two children from a previous marriage, Ruthmary and John, who brought this suit and who are the appellants. Cogswell had not seen his son since his divorce, some 55 years ago. He had seen Ruthmary a few times in the past two decades.

In May 1990, prior to Cogswell's hospital admittance, his attorney, Byron Stewart, met twice with Cogswell to discuss the will. Stewart prepared the will for Cogswell following those meetings. In addition, Cogswell's bookkeeper also knew of his testamentary intentions, and took dictation from him in the form of a list of property dispositions. According to the will and the list, Cogswell apparently wanted his two children, Ruthmary and John to receive some money ($5,000 each). Cogswell also wanted specific educational institutions to receive monetary bequests, with the remainder of his estate going to the First Christian Church of Independence. It was this information that Cogswell requested Stewart write up in a will just before his death.

Cogswell had several close friends who visited him while he was in the hospital: First, Rozella Wittmeyer, Cogswell's bookkeeper, who worked for him for almost thirteen years at his residence basement office. In 1985, Wittmeyer was made a signatory to Cogswell's checking and savings accounts. Second, Anne Billings, who worked part-time as a typist for Cogswell. Third, Ross Wyss, who worked with Cogswell in an organization which built homes in Independence, and who was also a business, religious and civic acquaintance. It was these three people who, on July 28, 1990, Cogswell told to see to it that Stewart completed his will. The same three individuals then went to Stewart's office to draft the will that same day.

After the will was drafted, it was taken to Cogswell and read to him in the hospital. Two disinterested witnesses and several other people (including the three just mentioned) witnessed the signing of the will which took place in Cogswell's hospital room from 2:30 pm to 3:00 pm. The will was notarized at about 3:15 pm the same day, with the notary confirming with the signing witnesses that they had, in fact: 1) signed the will; 2) seen Cogswell execute the will; and 3) confirmed with Cogswell that he understood this was his will and he wished it to be notarized. This was the will that was to be admitted to probate.

Every individual that saw Cogswell at or near the time of the execution of the will testified that he understood what was occurring, was not confused, and wanted to execute that will. Testimony from an admitting nurse and a registered nurse in charge of Cogswell, was to the effect that he was alert and oriented on all occasions. In addition, three health care providers, including two doctors, testified as to their opinions that Cogswell did indeed have testamentary capacity.

The people who testified to witnessing the will's execution, either saw Cogswell sign his will, or heard him acknowledge to the notary that he had in fact signed the will. In addition, a handwriting expert testified that the individual characteristics of Cogswell's signature could not have been duplicated in the order and sequence that they appear on the

will. He also testified that the signature was not a guided hand or forced signature.

Cogswell's son and daughter, Ruthmary and John, filed this action to contest the will of July 28, 1990. At trial the issues of testamentary capacity and undue influence were argued and submitted to the jury. The jury verdict found in favor of admitting the July 28, 1990 will to probate. On appeal, the appellants claim the trial court erred by: 1) making an irrebuttable finding of fact that the Whittmeyers (Respondents) were Cogswell's agents in the making of his will; 2) ruling inadmissible the issue of disinterested legal advice in the drafting and execution of the will; 3) overruling Appellants' relevancy objection to attorney Stewart's testimony concerning the Missouri Intestacy Statute; 4) sustaining Respondent's objection to Appellants' closing argument raising an adverse inference due to Respondents' failure to call a vital witness; 5) ruling that Appellants could not cross-examine attorney Stewart as to what duty of confidentiality he owed his client, and what he would have drafted in Cogswell's will if he had drafted it "after talking **solely** to Cogswell."

Pursuant to Rule 84.13(b), this court shall not reverse the judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action. *Bailey v. Valtec Hydraulics, Inc.*, 748 S.W.2d 805 (Mo.App.1988).

Appellants first contend the trial court erred by making an irrebuttable finding of fact that Respondents were Cogswell's agents in the making of his will.

The most important thing to note concerning this argument is that this was a jury trial, where the trial court does not make findings of fact as would be done in a court-tried case. Nevertheless, after careful review of the record, it is difficult to find where there was any finding of fact made by the judge which irrefutably rendered Respondents as Cogswell's agents. The only thing remotely resembling this point is a comment made to counsel outside of the jury's hearing. At one point, the trial court said to the attorneys, "I believe that Mr. Wyss (Respondent), was meaning to help in getting things done to complete Mr. Cogswell's will." In reviewing this statement, this court fails to see how this comment, outside of the jury's hearing, tends to make an irrebuttable finding of fact with respect to anyone serving as anyone's agent.

In any event, the issue of agency was neither plead by Appellants, nor did Appellants tender an instruction on the theory of agency at the trial court level. In the case at bar, Appellants advanced two theories at trial: 1) undue influence; and 2) lack of testamentary capacity. An issue which was not submitted to the jury by the trial court is not for the appeals court to hear. *Johnson v. Thompson.* 236 S.W.2d 1 (Mo. App.1950). Concerning instructions, the Supreme Court of Missouri held where a party submitted a theory to the appeals court, but did not make any effort to offer any instruction consistent with that theory at the trial level, the point was waived. *Kansas City v. Keene Corp.*, 855 S.W.2d 360 (Mo.1993). The case at bar is not unlike the situation in *Collins v. Drake,* 746 S.W.2d 424 (Mo.App. 1988). In *Collins,* the defendant failed to assert the issue of agency in his pleading, nor was the theory presented to the trial court or the jury, so such theories were held to be waived on appeal. *Id.*

Appellants, in the argument portion of the brief, raise a different matter from the point relied on. Though not required, the court will however, discuss the complaint.

While meeting with both parties in chambers, the judge made certain references to attorney Stewart, calling him "Byron," his first name. Byron is his first name. Appellants contend the trial court breached its duty of impartiality by calling Stewart by his first name. In addition, when in chambers, the issue arose about Stewart's character in drawing up the will for Cogswell as his agent. The judge commented that the conduct of Stewart during that event was "very characteristic of Byron." Appellants believe that this rendered the judge partial, violating his ethical duty.

Appellants use this portion of their brief, in violation of the rules, to complain about the judge in a case where the verdict

was unfavorable to them. To this court's knowledge, the judge's impartiality was never questioned in a separate legal proceeding, and is not properly raised as a point in this appeal. According to Rule 84.04(d), the point relied on is to state briefly and concisely what actions of the trial court are sought to be reviewed, and wherein and why they are to be claimed erroneous. In this case, Appellants' point includes more than one point of question, which does not contain or concern actions or rulings of the Court; therefore, there is no proper issue preserved for appeal. Rule 84.04 and 84.06(a); *Hammons v. Hammons,* 741 S.W.2d 795 (Mo.App.1987).

Appellants failed to ask this court for any sort of relief appropriate to a claim of judicial impartiality. There is no mention of a violation of the Canons of the Code of Judicial Action, and no proper action was taken by Appellants to bring this to light. In addition, a review of the transcript notes that Appellants did not make any objections at trial to the comments showing the judge's apparent familiarity with Stewart.

The comments that are the basis for this partiality argument stem from conduct that took place in chambers, not preserved for appeal, and were improperly presented. This oblique reference to court impartiality is not well taken, and does not sit well with this court.

The point is denied.

■ Appellants next contend the trial court erred during their closing argument, by ruling inadmissible the issue of "disinterested legal advice" in the drafting and execution of the will.

■ It is first noted the trial court is accorded broad discretion ruling on the propriety of closing arguments and will suffer reversal only for an abuse of discretion. *Moore v. Missouri P.R. Co.,* 825 S.W.2d 839 (Mo.1992).

■ Appellants seem to infer a lack of disinterested advice in the drafting and execution of Cogswell's will because of Respondents' (Wyss and Wittmeyer) involvement in the process. The main problem with this claim is that neither Wyss or Wittmeyer are attorneys, or owed any such duty to the testator. Appellants suggest that this is part of the crucial proof of undue influence, of which they have the burden. *M.A.I. 15.03; Sweeney v. Eaton,* 486 S.W.2d 453, 455 (Mo. 1972). However, this court believes this claim is not an element of an undue influence claim, it is a separate complaint, and Appellants cite no authority to the contrary.

Again, this theory was never plead at trial, nor was there an instruction submitted on this "disinterested advice" claim. As such, *Collins,* 746 S.W.2d at 428, prevents this court from finding an abuse of discretion on appeal, given the broad discretion afforded the trial court in the propriety of closing arguments.

The point is denied.

■ Appellants next claim the court erred in overruling Appellants' relevancy objection to attorney Stewart's testimony concerning the Missouri Intestacy Statute.

At trial, Cogswell's attorney, Stewart, was called as a witness by Respondents. In the course of his testimony, he was asked to explain how the decedent's estate would be divided in the event that this will was not admitted to probate. With no other valid will in existence, Stewart started to testify as to the Missouri Intestacy Statute. Appellants objected on relevancy grounds, saying "I object on relevancy. If they're claiming it's his will, what's intestacy have to do with it?" The trial court overruled the objection, saying, "It has to do with it in a sense that under the Law of Descent and Distribution you cannot give anything to Mrs. Cogswell's children or relatives, you cannot give a gift to a charity; so the distinction and relevance is that he had to have a will to do what he wanted to. Overruled." Appellants now claim that this testimony does not, in a reasonable degree, establish the probability or improbability of a fact in controversy. *Biener v. St. Louis Pub. Service Co.,* 160 S.W.2d 780, 783 (Mo.App.1942). They claim that whether Cogswell's putative will did, or did not, do a better job than the intestacy statute would have done, was a wholly collateral issue. This court disagrees.

**600** ■ ▬▬▬▬▬▬▬

■ In a will contest, the contestant (such as the appellants here) must allege and prove that they have a financial interest in the estate such that they would benefit by setting the will aside. *State ex rel. Muth v. Buzard*, 356 Mo. 1149, 205 S.W.2d 538 (1947). If they were to have succeeded in this contest, the estate would have passed through intestacy, a better result for them. This means proof of the contestants' interests, via the law of intestacy, should have been part of Appellants' prima facie case. This court fails to see how testimony that must be part of Appellants' case at trial could be prejudicial coming in during the other side's evidence.

In addition, evidence of what Appellants would take under intestacy is admissible to show their interest in the case. *Id.* A pecuniary interest of a witness, and in this case a party, can always be shown. *Houfburg v. Kansas City Stock Yards Co.*, 283 S.W.2d 539 (Mo.1955); *Kunz v. Munzlinger*, 242 S.W.2d 536 (Mo.1951).

Accordingly, the point is denied.

[4] Appellants' fourth point claims error in sustaining Respondents' objection to Appellants' closing argument, raising an adverse inference in connection with Respondents' failure to call a "vital" witness.

■ On review, the trial court's failure to sustain an objection to a party arguing the negative inference, resulting from opponent's failure to produce a vital witness to case where witness was equally available to both parties, constitutes prejudicial error. *Leehy v. Supreme Express & Transfer Co.* 646 S.W.2d 786 (Mo.1983). Therefore, the key to this point on appeal is whether the testimony would have been vital to the case. *Id.*

The witness Appellants complain of is Gail Holcombe. Gail Holcombe was at the hospital during the afternoon and early evening when Cogswell's will was read to him and duly executed. However, it is uncontroverted that Holcombe was not in Cogswell's room during the execution of the will. Nevertheless, it is Appellants' contention that Holcombe, who is a minister, and a registered nurse, was outside Cogswell's hospital room at the time of execution and possibly heard the will

being read to Cogswell, thus she should have been called to testify by Respondents.

■ In *Hill v. Boles*, 583 S.W.2d 141, 145–46 (Mo. banc 1979), the court established a balancing test to determine whether a witness is "equally available" to opposing litigants: 1) one party's superior means of knowledge of the existence and identity of the witness; 2) the nature of the testimony that the witness would be expected to give in the light of his previous statements or declaration, if any, about the facts of the case; and 3) the relationship borne by the witness to a particular party, as the same would be reasonably expected to affect his personal interest in the outcome of the litigation, and make it natural that he would be expected to testify in favor of one party against the other. *Id.*

■ Appellants correctly state that the failure of a party to call a witness who has knowledge of facts and circumstances vital to a case, generally raises a presumption that the testimony would be unfavorable to the party failing to offer such testimony. *Kelly v. Jackson*, 798 S.W.2d 699, 701 (Mo. banc 1990); *Leehy v. Supreme Exp. & Transfer Co.*, 646 S.W.2d 786, 790 (Mo. banc 1983).

■ The question here is ... how helpful would Holcombe's testimony have been? Appellants claim that Holcombe's testimony was vital to the case because: 1) none of the witnesses to the claimed execution of the will possess her medical training and expertise; and 2) none of Respondents' other witnesses claimed that another witness (Anne Billings) was not present during the reading of the will.

This court finds the existence of those two reasons did not make Holcombe a "vital" witness. She has only been shown to possibly be a corroborating or cumulative witness who may or may not have visited Cogswell's room while she was at the hospital. However, having not been in the hospital room during the reading and execution of the will, she was not an eyewitness and could not have possibly given testimony vital to the case concerning the reading and execution of the will. There were several other doctors and nurses that testified, from both firsthand observations or a review of medical

records, concerning Cogswell's condition. This court feels Holcombe's testimony would, therefore, have simply been cumulative.

The balancing test cited by Appellants simply does not apply where the witnesses evidence would simply be corroborative or cumulative. *Kelly v. Jackson,* 798 S.W.2d 699 (Mo. banc 1990). It is not necessary for a party to call every available witness, and unfavorable inferences may not be drawn where the witness produced has equal or superior knowledge of those not produced. *Carlisle v. Kroger Co.,* 809 S.W.2d 23 (Mo. App.1991).

Finding Holcombe's proposed testimony would have been merely cumulative, it would have been prejudicial error for the trial court in this case to have overruled Respondents' objection to the negative inference in Appellants' closing argument. *O'Donnell v. Heutel,* 637 S.W.2d 377 (Mo.App.1982).

Accordingly, the point is denied.

[5] Appellants' final point claims error in the trial court's ruling that Appellants could not cross-examine attorney Stewart as to what duty of confidentiality he owed his client, and what he would have drafted in Cogswell's will if he had drafted it after talking solely with Cogswell.

The trial court's discretion in limiting the scope of cross-examination will not be disturbed on appeal unless clear abuse is shown. *Parker v. Pine,* 617 S.W.2d 536 (Mo. App.1981).

What Appellants' contention really boils down to is an attack on attorney Stewart's legal ethics in this matter. It is worth mentioning that, at several locations in the transcript, Appellants' either directly attack or try to impeach Stewart as to his ethics. However, the only two legal theories advanced at trial, were testamentary capacity and undue influence. Stewart was not a party to this action, not present during the execution of the will, and was not a named will beneficiary. The court, by sustaining Respondents' objections to the scope of Appellants' cross-examination of Stewart, rightfully limited cross-examination to matters relevant to the case on trial, as the trial court has broad discretion in passing upon the permissible scope of cross-examination.

*Eickmann v. St. Louis Pub. Service Co.,* 323 S.W.2d 802, 806–807 (Mo.1959).

Appellants then contend that the court erred in sustaining Respondents' objection to the hypothetical and speculative questioning of Stewart on what provisions he would have drafted within Cogswell's will if he had drafted the will immediately after speaking only with Cogswell. Appellants try to convince this court of this error without the help of citing supporting authority. In addition, once Respondents' objection was sustained, it was necessary for Appellants to make an offer of proof so that the proposed answer to the hypothetical question might have been adequately preserved for review. *State v. McMikle,* 673 S.W.2d 791, 799 (Mo. App.1984). The offer must be made at the time of the objection and must show: 1) what the evidence will be; 2) its purpose and object; and 3) all facts necessary to establish admissibility. *Fletcher v. Independence,* 708 S.W.2d 158, 173–75 (Mo.App.1986). When proffered evidence is denied admission, relevancy and materiality must be shown by specific facts sufficient in detail to establish admissibility of the offering party to preserve the matter for appeal. *McMickle,* 673 S.W.2d at 799. As it is here, there is absolutely no record for this court to consider on appeal, nor is there any authority listed which would allow the court to grant any relief on this point.

As such, the trial court properly limited Appellants' cross-examination concerning the speculative, hypothetical issue of what alternative will Stewart may have drafted. It is well-settled law that cross-examination should not be used to covertly raise suspicions, and prejudice jurors by reciting, as fact, matters not properly entered as evidence, such as speculative, hypothetical situations. *State v. Creason,* 847 S.W.2d 482, 488 (Mo.App.1993). This attempted cross-examination of Stewart would have done just that.

The point is denied.

The judgment is affirmed.

All concur.