STATE of Missouri, Respondent,

v.

Terry Lee EDWARDS, Appellant.

No. WD 51078.

Missouri Court of Appeals, Western District.

Jan. 30, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1996.

---

Joe Don Butcher, Independence, for appellant.

Philip M. Koppe, Asst. Attorney General, Kansas City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and HANNA, JJ.

FENNER, Chief Judge.

Terry Lee Edwards appeals from his convictions and concurrent eight and two-year sentences as a class X offender for the sodomy and first degree sexual abuse of K.E., pursuant to §§ 566.060.2 and 566.100, RSMo Supp.1992,[1] respectively. Appellant contends that the trial court erred in ruling that the defendant could not call two witnesses to testify that the victim "does not know the difference between truth and fantasy" due to the existence of the privilege established in section 337.636, in denying appellant's motion for judgment of acquittal as to the sodomy charge based on insufficiency of the evidence to prove deviate sexual intercourse, and in finding appellant to be class X offender.

The evidence reveals that K.E., who was 13 years old at the time of trial, was living at her mother's house in Independence, Missouri, with the appellant (her uncle), her mother, grandmother, and two brothers prior to October 15, 1993. K.E. often referred to appellant as her father while the family was living in this arrangement.

K.E. testified that appellant had "sexually abused" her when they lived together in Independence from the time she was "five, six, or seven" years old. The last time she remembered appellant "touching" her was in early October 1993 when she was 12 years old, stating that appellant came up to her bedroom and "kind of got on top of [her], and he touched [her] on [her] breast and above [her] panties."

K.E. testified that events like these had occurred on three occasions while she was 11 or 12 years old. K.E. stated that she remembered appellant "touching [her] around [her] vagina" on three occasions, and said that once he touched her "below [her] panties." After these incidents, appellant would threaten to kill her if she said anything.

K.E. eventually told her mother about the incidents and her mother replied that she

would "talk to [appellant] about it." On one occasion, K.E.'s mother warned appellant to stay away from K.E. Appellant ignored the warning and did "touch" her again according to K.E.

On October 15, 1993, K.E. told her counselor at school that she had been abused at her home by appellant. The school notified the Division of Family Services ("DFS"), and on the same date DFS counselor Janice Chance was sent to the school to investigate the case. K.E. repeated her statements to Ms. Chance. K.E.'s mother was then contacted along with appellant. K.E.'s mother instructed appellant to find another place to live until the allegations could be looked into.

K.E. was then sent for treatment and admitted to the Independence Regional Health Center. She was released, removed from the home of her mother, and placed in the Evangelical Children's Home where she resided through trial. She received treatment and counseling at the hospital under the supervision of Leanne Wilson, a licensed clinical social worker, and Dr. Jose Menendez, a psychiatrist. Michael Manade and Stacey Beisel, a psychologist and a social worker, respectively, aided Wilson and Menendez in implementing the prescribed treatment for K.E.

The case was also presented to the Independence Police Department for further investigation. On December 8, 1993, Detective Rast interviewed K.E. and her mother, with K.E. relating the same allegations of sexual abuse against appellant. The following day, after being contacted by the detective, appellant voluntarily appeared at Detective Rast's office to discuss the allegations against him. After receiving and waiving his *Miranda* rights, appellant was questioned by Detective Rast with the questions and answers recorded by the detective in the form of a written statement. Appellant reviewed the written statement after the interview ended, initialed all the answers as being correct, and signed the statement.

In his statement, appellant admitted that he had touched K.E. in an improper way, the

1. All statutory references are to Missouri Revised Statutes, 1992 Supplement, unless otherwise noted.

first time being when she was five or six years old. Appellant also admitted to an incident where he was laying on top of K.E. to swat roaches off the headboard of her bed and wrestled some with K.E. after he had been drinking, which led to one of the improper touching incidents. Appellant could not deny that he had touched K.E.'s breast or put his hand inside her panties on this occasion. He also admitted that K.E.'s mother had confronted him on occasion about the questionable behavior. Appellant admitted to having touched K.E.'s breasts 20 times over the years, that he had touched her "between the legs," and that he knew it was wrong to touch her in this way.

At trial, appellant testified that K.E.'s allegations were made in retaliation to his grounding her on the morning that she went to her counselor and that no improper conduct occurred. With regard to his statement to the police, appellant claims that he and Detective Rast had a misunderstanding of the term "touching" as it was used in his statement. Appellant states that any "touching" was a playful gesture, and not of a sexual nature. Detective Rast, however, testified that appellant knew he was talking about sexual abuse when he used the term "touching" and that there was no doubt in his mind that appellant meant he had touched K.E. in an improper and sexual manner.

After hearing the evidence and arguments of counsel, the jury convicted appellant of sodomy and first degree sexual abuse. This appeal timely followed.

## I. PRECLUSION OF TESTIMONY FROM K.E.'S THERAPISTS

Prior to trial, the State filed a motion *in limine* to exclude testimony from Michael Manade and Stacey Beisel, alleging that their testimony was protected by the physician/patient privilege under § 491.060(5). Manade is a psychologist who worked with K.E. as a therapist under the supervision of Leanne Wilson, a licensed clinical social worker under the laws of Missouri, and Dr. Menendez, K.E.'s psychiatrist. Beisel is a social worker

at the Evangelical Children's Home who also assisted in K.E.'s treatment at the home.

At trial, the objection to testimony from these witnesses was renewed and the court determined that such testimony would constitute privileged information under section 337.636, which reads:

Persons licensed [as clinical social workers] under the provisions of sections 337.600 and 337.639 may not disclose any information acquired from persons consulting them in their professional capacity, or be compelled to disclose such information except.... [2]

Appellant claims that Manade would testify that K.E. "does not know the difference between truth and fantasy" and that such testimony is not privileged information under section 337.636. We agree with this assertion. The statutory privilege conveyed by section 337.636 applies to licensed clinical social workers only—nowhere in the statutory chapter are unlicensed therapists brought within the umbrella of the privilege. There is no dispute that neither Manade nor Beisel were licensed clinical social workers, although they may have been working at the direction of such a person. Though the record reveals that Manade was also trained to become a licensed professional counselor as defined by section 337.500(4), he had not received his licensure at the time of his involvement in K.E.'s treatment; consequently, the privilege granted to communications between a licensed professional counselor and a counselee by section 337.540 is also inapplicable. The trial court erred in determining that the testimony proffered by appellant constituted privileged communications.

Though we believe the trial court erred in finding the proffered testimony to be privileged, that does not in and of itself require us to reverse the trial courts ruling and remand this cause for new trial. If a ruling regarding the admission or exclusion of evidence is correct for any reason, it will be affirmed regardless of the reason articulated by the trial judge. *First Nat'l Bank of*

---

**2.** Appellant does not contend on appeal that one of the exceptions to the privilege applies to make the testimony in question admissible. Appellant

did argue that one of the exceptions applied at trial, but that argument was correctly found to be without merit by the trial court.

*Ft. Smith v. Kansas City S. Ry. Co.*, 865 S.W.2d 719, 738 (Mo.App.1993).

The State claims that even if the testimony of Manade and Beisel would not consist of privileged communications, the proposed testimony was inadmissible because it constituted an attempt to establish the victim's reputation for truth or veracity based upon specific conduct or statements she made to them. A complaining witness in a sex offense case may be impeached by evidence that her general reputation for truth or veracity is bad, but not by acts of specific conduct. *State v. Foster*, 854 S.W.2d 1, 4 (Mo.App.1993).

Once the state's motion and objection to the testimony was sustained, it was necessary for appellant to make an offer of proof to adequately preserve the issue for review. *Anderson v. Wittmeyer*, 895 S.W.2d 595, 601 (Mo.App.1995). The offer must be made at the time of the objection and show: (1) what the evidence will be; (2) its purpose and object; and (3) all facts necessary to establish admissibility. *Id.* When proffered evidence is denied admission, relevancy and materiality must be shown by specific, sufficiently detailed facts to establish admissibility by the offering party in order to properly preserve the issue for appellate review. *Id.* Where several facts are included in an offer of proof, it is for the proponent to sever the admissible from the inadmissible. *In re Drew*, 637 S.W.2d 772, 777 (Mo.App.1982). If an offer of proof is made that contains many facts, some of which ultimately deemed admissible and some inadmissible, then the whole offer, if properly objected to, is deemed inadmissible. *Lott v. Kjar*, 378 S.W.2d 480, 483–84 (Mo.1964); *Woodiel v. Barclay Enters., Inc.*, 858 S.W.2d 247, 253 (Mo.App.1993).

In appellant's offer of proof, it is stated:

[I] believe that by then putting K.E. on the stand and allowing her to testify and stating everything she's testifying is the truth, that we should be able to first of all cross examine her with regard to whether she's told the truth the whole time at the Evangelical Home. And then if she in fact denies that, the evidence from [Manade] would be in the nature of rebuttal, if you will, or for impeachment purposes. And I would be doing it based on their general—what they've learned of her general reputation for the truth as opposed to asking him any specific instances. And I believe it's prejudicial to [appellant] to deny him the right to call those people in who have in fact stated—I mean I've got records that are an inch thick, and throughout those records it indicates that she's basically a liar, and she doesn't know the difference between truth and fantasy. And I think that jeopardizes the defendant's ability to impeach and cross examine her and introduce evidence showing that she is a liar to the jury.

When you've got a child witness ... [y]ou have to be careful cross examining ... because you don't want to alienate the jury. And so the best way sometimes to do that is to bring in other people who have had conversations and dealings with her to let them tell the jury she's a liar as opposed to me calling her that. . . .

Appellant claims Manade would testify as to K.E.'s general reputation for truth—evidence that could be admissible if properly elicited. However, appellant also states that he wants to let "other people who have had conversations and dealings with [K.E.] tell the jury she's a liar," which alludes to testimony of specific instances of conduct—evidence that would be inadmissible to attack K.E.'s character.

Further, appellant states in his offer of proof and argues in his brief that Manade would testify that K.E. "doesn't know the difference between truth and fantasy." Such testimony clearly involves the insights of an expert in the field of psychology and not the knowledge possessed by a common person in the community. Appellant made no attempt to qualify Manade and Beisel as expert witnesses. Even if so qualified, expert testimony is not admissible to challenge the credibility of witnesses, appellant's stated purpose for wanting to introduce the evidence. *State v. Calvert*, 879 S.W.2d 546, 549 (Mo.App. 1994). Expert testimony is only admissible when it is clear that the jurors are not able

**846**

to draw correct conclusions from the facts proved because they lack experience or knowledge of the subject matter. *Id.*

Because all of the facts argued by appellant in his offer of proof were not admissible and the proffered testimony was properly objected to, the trial court did not abuse its discretion in rejecting the offer and disallowing the proposed testimony even though it incorrectly determined the testimony was privileged. Point denied.

## II. SUFFICIENCY OF THE EVIDENCE

In order to obtain a conviction for sodomy, the State must prove beyond a reasonable doubt that the defendant had deviate sexual intercourse with the victim to whom he is not married and who is less than fourteen years old pursuant to section 566.060.3. The term "deviate sexual intercourse" is defined in section 566.010(1) as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." Appellant maintains there was no evidence that he engaged in deviate sexual intercourse with K.E because the State failed to show he actually touched her vagina or that his actions constituted a sexual act.

In considering a challenge to the sufficiency of the evidence to support a conviction, this court limits its review to determining whether there is substantial evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Idlebird,* 896 S.W.2d 656, 661–62 (Mo.App.1995). This court accepts as true all the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all contrary evidence and inferences. *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995).

Viewing the evidence under these standards reveals that K.E. testified that appellant had touched her "around her vagina"

on at least three occasions, and had touched her "below her panties" during one of these incidents. In his statement to Detective Rast, appellant admitted he had touched K.E. "between her legs" and that it was "wrong to do so." It can be reasonably inferred from this testimony that appellant engaged in "deviate sexual intercourse" with K.E. Detective Rast also testified that he and appellant both understood what was meant by the term "touching" when appellant provided his statement to the police. Appellant's position is based on his belief in his own testimony, which we disregard for the purpose of this review because it is inconsistent with the verdict reached by the jury.

The favorable evidence for the State, and all reasonable inferences drawn therefrom, is sufficient to support the verdict reached by the jury. The trial court did not err in denying appellant's motion for judgment of acquittal. Point denied.

## III. CLASS X OFFENDER STATUS

Appellant claims for the first time on appeal that the trial judge erred when it found him to be a "class X offender" pursuant to the provisions of section 558.019, RSMo Supp.1992,[3] following his conviction under count 1 for the non-aggravated form of sodomy. Appellant argues that section 558.019 applies only to class A and B felonies and to dangerous felonies as defined by section 556.061(8), and that because sodomy is an ungraded felony with a non-Code punishment[4] and not within the definition of a dangerous felony (unlike "forcible sodomy"), section 558.019 was not applicable to the sodomy conviction.

The State points out that appellant overlooks section 557.021, which provides:

3. For the purposes of applying the ... minimum prison term provisions of section 558.019, RSMo, and for determining the

3. Section 558.019 was amended effective August 28, 1993. Though it is unclear whether the alleged sodomy occurred prior to or after the date of the statutory amendment, the two statutes are substantively identical even though the amended version deletes references to the "prior offender," "persistent offender," and "class X offender" classifications. Under both versions,

an individual in appellant's situation who has three or more prior felony convictions must serve 80 percent of his sentence.

4. The punishment for the crime of non-forcible sodomy under § 566.060.3 was "life imprisonment or a term of years not less than five years" pursuant to 566.060.2.

penalty for attempts and conspiracies, offenses defined outside of this code shall be classified as follows:

(1) If the offense is a felony:

(a) It is a class A felony if the authorized penalty includes death, *life imprisonment,* or imprisonment for a term of 20 years or more.

Because the punishment for non-forcible sodomy included "life imprisonment or a term of not less than 5 years," non-forcible sodomy is considered a class A felony for the purposes of application of section 558.019. *See Weeks v. State,* 785 S.W.2d 331, 332 (Mo.App.1990); *Wescott v. State,* 731 S.W.2d 326, 331 (Mo.App.1987)(holding that rape, an unclassified felony with a non-Code punishment of life imprisonment or a term of imprisonment not less than five years, was a class A felony for the purposes of extended imprisonment provisions).

Though the crime of non-aggravated sodomy under section 566.060.3 was an unclassified felony carrying its own non-Code punishment, section 557.021.3(1)(a) classifies it as a class A felony for the purposes of applying the minimum prison term provisions of section 558.019. The trial court did not err in sentencing appellant as a class X offender pursuant to his sodomy conviction. Point denied.

The judgment of the trial court is affirmed.

All concur.