Jerral PICKLE, Appellant,

v.

DENNY'S RESTAURANT,
INC., Respondent.

No. WD 40480.

Missouri Court of Appeals,
Western District.

Dec. 20, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 1989.

Application to Transfer Denied
March 14, 1989.

Stephen G. Mirakian, Robert G. Scott, Kansas City, Mo., for appellant.

Leonard R. Frischer, Kansas City, Mo., for respondent.

Before FENNER, P.J., and MANFORD and GAITAN, JJ.

GAITAN, Judge.

Plaintiff-appellant, Jerral Pickle appeals from a judgment against him and in favor of defendant-respondent, Denny's Restaurant, Inc. He alleges the trial court erred in the following respects: first, by excluding evidence of four violent crimes occurring on defendant's premises within three years immediately prior to plaintiff's injury; second, by failing to submit plaintiff's proposed instruction "D" which showed defendant's employees had knowledge of these violent crimes; third, by failing to permit plaintiff to present expert evidence on the subject of premises security; and fourth, by limiting testimony of a victim of one of the past violent crimes on defendant's premises.

Jerral Pickle (hereinafter plaintiff) was shot in the chest while in the parking lot of the Denny's Restaurant located at 1600 Broadway, Kansas City, Missouri, in the early morning hours of May 10, 1985. According to plaintiff's testimony, plaintiff had driven to the restaurant, accompanied by his wife, Nellie Pickle, for the purpose of applying for a job and had parked his vehicle in the parking lot located on the restaurant premises. The parking lot, including the place where plaintiff parked his vehicle, was reserved for restaurant patrons and was controlled and maintained by defendant-respondent, Denny's Restaurant, Inc. (hereinafter defendant or Denny's). Before plaintiff exited his vehicle to go into the restaurant, he was accosted and robbed by an assailant who was armed with a shotgun. During the course of the robbery, the assailant demanded plaintiff surrender his truck keys. When plaintiff refused to do so, plaintiff was shot in the chest at point-blank range, causing him to suffer severe, permanent and disabling injuries that required him to twice undergo surgery. Plaintiff's injuries included a shattered sternum and the loss of a lung. Plaintiff incurred expenses of approximately $50,000.00. In plaintiff's amended petition, he alleged that the restaurant premises and parking lot were unreasonably dangerous. He alleges that defendant had knowledge of the danger and failed to make the premises, including the parking lot, reasonably safe for business visitors.

At trial, plaintiff introduced evidence that in the two years and 11 months prior to plaintiff's shooting, there had been 13 violent crimes against persons that occurred on the premises, either in the restaurant or in the parking lot and that, of

these 13 crimes, defendant had *actual* knowledge of at least armed robberies and violent physical assaults. The 13 crimes in question occurred on different nights of the week, Monday through Sunday, but generally occurred between the hours of 9:00 p.m. and 6:00 a.m. Nine of the 13 crimes introduced into evidence by plaintiff occurred within two years and three months of the attack on the plaintiff. These nine crimes included one armed robbery and two physical assaults that were perpetrated against employees of Denny's and of which defendant had actual knowledge.

One week before the attack on plaintiff, two young men sitting in a tow truck in the same portion of the lot where plaintiff was parked when he was accosted were robbed at gunpoint and kidnapped from the parking lot after which time they were sodomized at gunpoint. One of the victims of this attack testified that one or more of defendant's employees had observed the robbery in progress. The plaintiff alleged that despite the history of violent crimes against persons on the premises, including the parking lot and restaurant, defendant had not hired an armed security guard or a security service to patrol and secure the lot. Plaintiff further alleges that the only safety measures pertaining to the premises were lighting in the parking lot area, a fence with a gate that could be locked to close off the back alley access to the parking lot (which the evidence revealed was often left open), and an off-duty police officer who had been employed to work occasional Friday and Saturday nights to maintain control inside the restaurant.

On the night plaintiff was shot, Denny's restaurant employees had failed to lock the back gate, and the weekend security guard for the interior of the restaurant was not on duty. The robber who shot the plaintiff entered and exited through the back gate to the parking lot.

Verdict was rendered in favor of defendant. Plaintiff timely filed a motion for new trial which was denied. Plaintiff appeals from the final judgment in this case on the grounds of error set forth hereinafter.

## MADDEN and DECKER CASES

Before considering the issues presented by plaintiff, herein, we must consider the recent opinions by the Missouri Supreme Court on the question of a business owner's premises liability to invitees. The cases of *Madden v. C & K Barbecue Carryout, Inc.*, and *Decker v. Gramex Corporation* were consolidated for appeal as *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59 (Mo. banc 1988).

First, in the *Madden* case, the plaintiff purchased food from defendant and upon leaving defendant's restaurant was kidnapped. She was later physically and sexually assaulted. Thereafter, she brought suit against defendant for personal injuries sustained as a result of the kidnapping and assault. She contended that the defendant failed to provide adequate security to protect its patrons and failed to warn business invitees of the danger present on the premises. She further alleged that defendant's premises was the scene of numerous violent crimes over a three year period immediately preceding this assault. These crimes included six armed robberies, six strong-arm robberies, one assault, and one purse snatching. Plaintiff's amended petition was dismissed for failure to state a claim.

Second, in the *Decker* case, Gary and Donna Decker were Christmas shopping at a shopping center in north St. Louis County. Upon returning to their automobile, they were forcibly abducted by two unknown assailants in the shopping center parking lot. They were both murdered after leaving the shopping center with their assailants. Donna Decker was raped and sodomized before she was killed. The son and parents of the Deckers brought a wrongful death action against defendants for failing to provide adequate security in the parking lot area, for failure to protect Gary and Donna Decker from criminal assault, abduction, and murder, and for failing to warn the Deckers of those dangers.

The plaintiffs pleaded a history of crime on or about defendant's premises prior to the Decker murders. These crimes includ-

ed at least four armed robberies, three purse snatchings, robbery second degree, attempted armed robbery, assault, assault with a deadly weapon and other assorted crimes. The defendant filed a motion for summary judgment stating that Missouri did not recognize a duty on the part of a business owner to protect his patrons against criminal conduct of unknown third parties. The trial court sustained the motion for summary judgment.

Regarding the question of whether business owners have a responsibility to protect their invitees from criminal attack from unknown third parties, the Missouri Supreme Court has stated a qualified "yes" in the *Madden* and *Decker* cases. The answer depends upon the facts and circumstances of a given case. The touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Lowery v. Horvath*, 689 S.W.2d 625, 627 (Mo. banc 1985). *Madden*, 758 S.W.2d at 62.

The Supreme Court went on to state that the crimes alleged in the *Madden* case, if established at trial, are sufficient to put the defendant on notice of the possibility that its invitees may be exposed to danger from the criminal acts of unknown third parties. Consequently, plaintiff's petition in the *Madden* case should not have been dismissed.

In the *Decker* case, the Supreme Court stated that the affidavit that plaintiffs filed in opposition to the motion for summary judgment listing numerous violent crimes occurring on or about defendant's premises over a three year period before the murders are sufficient to establish a duty of care of defendant to take reasonable means to protect their invitees from third party criminal attacks. The Supreme Court concluded that whether the defendant satisfied that duty is a jury question and that the trial court should give plaintiffs the opportunity to amend their petition to include the facts alleged in the affidavit. *Madden*, 758 S.W.2d at 63.

## I.

■ With the backdrop of the *Madden* and *Decker* cases in mind, we now examine the case at bar.

Here, plaintiff sought to present to the court and jury evidence of 13 crimes. The trial court admitted evidence of nine crimes which occurred over a period of two years and three months. In fact, plaintiff's counsel was able to stand in front of the jury and read police reports word for word. Those crimes involved five armed robberies, four of which involved the use of a hand gun, and a fifth, a knife. In addition, the court admitted evidence of four assaults, each of which took place in the parking lot. Finally, plaintiff was allowed to introduce evidence of events surrounding an armed robbery involving the use of a shot gun that occurred in Denny's parking lot only seven days before plaintiff's incident. However, the court did exclude the presentation of evidence regarding four other crimes. The first excluded crime occurred on June 30, 1982, and involved the robbery of the cash register inside Denny's restaurant. The next occurred on October 15, 1982, and involved an attempted robbery in the restroom inside Denny's restaurant. However, a scuffle did ensue on the sidewalk outside the restaurant and the victim sustained a cut. The third occurred on October 19, 1982. It again involved the taking of money from the cash register at Denny's restaurant. Finally, the fourth occurred on July 11, 1983, and involved the armed robbery of a person walking through the alley behind Denny's restaurant. However, this individual had not been a customer of Denny's but was merely walking in the alley toward his truck. This crime did not occur on Denny's property.

The trial court has considerable discretion in the exclusion of evidence and, unless there is an abuse of that discretion, the trial court's judgment should stand. *Karashin v. Haggard Hauling and Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983). In the final analysis, the four excluded incidents complained of were merely cumulative and of little, if any, additional proba-

tive effect in determining whether or not the incident involving the plaintiff was foreseeable.

The trial court permitted evidence of nine violent crimes that occurred over a two year, three month period. If the jury wanted to find that Denny's failed to use ordinary care to protect its patrons, the evidence was there for them to do so. In addition, the plaintiff was able to present live testimony from four witnesses, all of whom were employees of Denny's that they had been aware of previous crimes that had been perpetrated in Denny's parking lot. Three of those individuals were in management positions with Denny's. One of those witnesses, Gary Martindale, told the jury that he had told higher officials at Denny's that it was his feeling that there needed to be better security in the parking lot. In light of the substantial evidence admitted in support plaintiff's case, any further evidence of violent crimes on the premises would have been merely cumulative. Therefore, this point fails.

### II.

■ Next, plaintiff asserts the trial court's failure to submit proposed instruction D was reversible error. That instruction states:

> Notice to or knowledge gained by an employee while the employee was performing his job duties, is notice to or knowledge of the employer when the notice or knowledge pertains to a matter which might be expected to affect the employer's interests.

Plaintiff has the burden to show that he was prejudiced by the refusal to give the instruction. *Crabb v. Mid–American Dairymen, Inc.*, 735 S.W.2d 714, 718 (Mo. banc 1987). Plaintiff went to great lengths to establish that employees of defendant were aware of the dangerous condition of the premises. He elicited testimony from three former managers of Denny's as well as the victim of one of the crimes who indicated that a Denny's employee watched from the restaurant as the robbery occurred.

Plaintiff presented testimony from Gary Martindale, a former assistant manager of Denny's, that he had personal knowledge of the armed robbery in the parking lot of David Allison, a Denny's waiter, which Martindale discussed with another Denny's manager. Further, on two separate occasions Martindale was assaulted in the parking lot himself. He reported the incident involving Allison to the general manager—Mr. Shinabargar, and the second incident involving himself to the district manager—Don Metzinger. Additionally, regarding Martindale's second assault he informed the then district manager, Rick Van Fleet. Thereafter, Mr. Martindale advised his superiors that he would no longer work for Denny's at that location and requested and received a transfer.

Before his departure from Denny's at 16th and Broadway, Martindale met with his superiors to discuss a smooth transition of the management of this Denny's restaurant. Again, security measures were discussed, whereupon it was determined that the gate was to be locked from approximately 5:00 p.m. to 7:00 a.m. each day.

It is clear from the evidence that Denny's management was aware of the crimes occurring in its parking lot, and attempted to take security measures to prevent those crimes by lighting and fencing the parking lot and hiring a security guard on Friday and Saturday night. Neither the trial court nor, we may assume, the jury lacked the intelligence of reasonable men. *Gathright v. Pendegraft*, 433 S.W.2d 299, 311 (Mo. banc 1968). The jury was capable of transferring knowledge to Denny's management because evidence showed that management was aware. Consequently, there could have been no confusion, and hence, no prejudice to the defendant as a result of the failure of the trial court to submit instruction D.

### III.

■ In point three, the plaintiff alleges that the trial court erred by refusing to permit expert testimony on the subject of

premises security. This is an interesting point because at trial the plaintiff went to great lengths to agree with the trial court that this was not an area where expert testimony was needed. Plaintiff's counsel agreed then, that a lay person can decide whether or not (1) the parking lot was unreasonably dangerous, (2) Denny's knew or should have known of this condition, and (3) Denny's failure to provide adequate security caused plaintiff to suffer his injuries. Conversely, defendant's counsel argued then, for the presentment of expert testimony on this subject. On appeal, these parties have changed their respective positions.

The trial court, thereafter, concluded that the subject of premises security was within the common knowledge of the average lay juror. The ruling should not be disturbed on appeal unless it plainly appears that the trial court has abused its discretion. *Keller v. International Harvester Corp.*, 648 S.W.2d 584, 592 (Mo.App. 1983). We find no abuse of that discretion here. Contrary to plaintiff's assertions on appeal, methods necessary to secure defendant's parking lot need not be sophisticated. Additionally, defendant was not required to provide the best security plan known to mankind; instead defendant was held to a standard of "ordinary care" by instruction number 6. That is to say, the care that an ordinarily careful and prudent person would use under the same or similar circumstances. Plaintiff, therefore, loses on this point.

### IV.

The plaintiff's final argument goes to the exclusion by the trial court of testimony by witness Cary Volland of what transpired after Mr. Volland was robbed and kidnapped from Denny's parking lot. The trial court sustained defendant's motion in limine preventing evidence that would have shown that Mr. Volland was sodomized. Plaintiff argues this testimony counters defendant's assertion that had he (Pickle) turned over the keys to his truck he would not have been shot. Here, plaintiff argues that Mr. Volland turned over his keys and was kidnapped and sodomized.

Consequently, plaintiff contends that the defendant was able to argue that plaintiff caused his own injury by failing to turn over his keys.

Relevant evidence is to be admitted unless its probative value is outweighed by its prejudicial effect in that the results unfairly appeal to emotions. *Wood v. St. Louis Public Service Co.*, 362 Mo. 1103, 246 S.W. 2d 807, 815 (Mo. banc 1952). Here, any error caused by the trial court by excluding testimony on the sodomy was not reversible error. Other than the "potential" to counter defendant's argument about plaintiff's failure to cooperate with his assailant, that evidence is not probative. The original and intended purpose of Mr. Volland's testimony was to show that violent crimes, armed robbery and kidnapping, occurred on defendant's premises. That it did show. While we disagree with the trial court's judgment to exclude testimony on the criminal conduct which occurred after the kidnapping, that error was not reversible error.

The judgment of the trial court is affirmed.

All concur.