Dwight BOWMAN, Jr., Appellant,

v.

McDONALD'S CORP., a/k/a Delaware McDonald's, Lewis Webb, Respondents.

WD 50659.

Missouri Court of Appeals, Western District.

Dec. 12, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied March 26, 1996.

John E. Rogers, Kansas City, Anthony DeWitt, Overland Park, Kan., for appellant.

Randa Rawlins, Kansas City, for McDonald's Corp.

Spencer J. Brown, Kansas City, for Lewis Webb.

Before FENNER, C.J., P.J., and ULRICH and SMITH, JJ.

FENNER, Chief Judge.

Appellant, Dwight Bowman, Jr., appeals from a defense verdict in favor of respondents, Lewis Webb and the McDonald's Corporation ("McDonald's"), in a negligence action. Appellant contends that the trial court committed error by taking an impermissibly narrow view of Missouri law, erroneously excluding evidence on that basis, and in failing to give certain jury instructions.

This case arises out of events that occurred on August 23, 1991. On that date, appellant and a friend, Jay Faulkner, went to the McDonald's restaurant located at 8304 Hickman Mills Drive in Kansas City, Missouri to eat. The restaurant in question was operated by Webb under a franchise agreement with McDonald's and had been so operated since December 8, 1990. McDonald's is the owner of the real property and building located at the 8304 Hickman Mills Drive address.

After finishing their meal, appellant and his friend remained in the restaurant, attempting to obtain the phone numbers of some girls. Two unknown men also arrived at the restaurant during this time period.

Testimony revealed that the two men were seen near appellant's car, which was parked on the McDonald's lot, but never entered the restaurant. As appellant and Faulkner left the restaurant and approached appellant's car, they were confronted by the two unknown men who demanded appellant's car keys. The unknown men then drew weapons, causing appellant and Faulkner to attempt to flee. The armed men fired shots at appellant and Faulkner, striking appellant in the back, ultimately rendering him a paraplegic. After looting appellant's pockets and attempting to chase down Faulkner, the assailants escaped.

Appellant filed suit against Webb and McDonald's as a result of the events of August 23, 1991, alleging liability against both defendants on the basis of Restatement (Second) of Torts §§ 344[1] and 324A[2], liability against McDonald's based on Restatement (Second) of Agency § 267, and seeking punitive damages. After a jury trial, verdicts were returned in favor of both Webb and McDonald's. This appeal followed.

Appellant has alleged ten points of error on appeal, all of which allege either errors in the exclusion of evidence or refusal of jury instructions on the part of the trial court. With regard to the exclusion of evidence, appellant claims the following errors were committed by the trial court:

(1) the exclusion of evidence of prior crimes at neighboring businesses;

(2) the exclusion of evidence of prior crimes on the 8304 Hickman Mills Drive premises dating back to 1987;

(3) the exclusion from evidence of a "Free Meals for Police Officers" program insti-

tuted by the prior franchisee/operator of the 8304 Hickman Mills Drive restaurant and any resulting influence on crime at the business;

(4) the exclusion of testimony from Ronald Havens, an assistant manager at the 8304 Hickman Mills drive restaurant, regarding the presence of prostitutes at the restaurant as it applied to the "family nature" of the restaurant espoused by Webb;

(5) the exclusion of testimony from Havens regarding Webb's alleged statements concerning the hiring of a security guard;

(6) the exclusion of testimony from appellant's security experts, Major John Coleman and Russell Colling, regarding the target of the assailants on the night in question and the potential effectiveness of a security guard on that night;

(7) the exclusion of testimony from Officer Gary Chrisman on the on the issue of the effectiveness of armed security guards as it pertained to the issue of causation; and

(8) cumulative error.

With regard to the trial court's refusal to accept three of appellant's proffered instructions, the alleged errors are as follows:

(1) the trial court erred in refusing instructions defining the term "co-possessor" as it related to the potential liability of McDonald's and in rejecting the verdict-directing instruction as to the liability of McDonald's under Restatement (Second) of Torts § 344.

(2) the trial court erred in refusing the verdict-directing instruction proffered by appellant on the issue of the liability of

---

1. Restatement (Second) of Torts § 344 reads:
 A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
 (a) discover that such acts are being done or are likely to be done, or
 (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

2. Restatement (Second) of Torts § 324A reads:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

McDonald's under Restatement (Second) of Torts § 324.

Having reviewed the record before us and the exhaustive arguments of the parties, we affirm the trial court in all regards.

## I. *EVIDENTIARY ERRORS*

■ Appellant alleges seven points of error committed by the trial judge concerning the exclusion of various evidence. A trial court has broad discretion to admit or exclude evidence at trial. *Tennison v. State Farm Mut. Auto. Ins. Co.*, 834 S.W.2d 846, 848 (Mo.App.1992). A trial court is empowered to determine relevancy, and matters which are irrelevant or which are remote and collateral ought to be excluded from evidence. *Radloff v. Penny*, 225 S.W.2d 498, 502–03 (Mo.App.1949). A trial court's ruling on evidence ordinarily will not be overturned absent an abuse of discretion. *Egelhoff v. Holt*, 875 S.W.2d 543, 549–50 (Mo. banc 1994); *Richardson v. State Highway and Transportation Comm'n*, 863 S.W.2d 876, 881 (Mo. banc 1994). Abuse of judicial discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.; McClure v. Wingo*, 886 S.W.2d 141, 142 (Mo.App.1994). "Said another way, abuse of discretion means an untenable judicial act that defies reason and works an injustice." *McClure, id.* If reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Richardson*, 863 S.W.2d at 881; *Anglim v. Missouri Pacific Railroad Co.*, 832 S.W.2d 298, 303 (Mo. banc), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). It is under these principles that we review the errors alleged by appellant.

### A. *Prior Crimes at Neighboring Businesses*

■ Before we are required to address the merits of an issue on appeal, the appellant must properly place the issue before the court. An issue is not presented for review if it is not presented to the trial court. *Stone v. City of Columbia*, 885 S.W.2d 744, 747 (Mo.App.1994). An order sustaining a defendant's motion in limine is not subject to review absent a timely offer of proof by the plaintiff due to the interlocutory nature of such a ruling. *Turner v. Fuqua Homes, Inc.*, 742 S.W.2d 603, 613 (Mo.App.1987). Further, all allegations of error must be included in a motion for new trial to be preserved for appellate review. Rule 78.07; *Murr v. Boyd*, 813 S.W.2d 364, 365 (Mo.App. 1991).

Respondents contend that appellant's motion for new trial did not preserve the issue of the exclusion of testimony from Officer Chrisman regarding prior crimes at neighboring businesses as required by Rule 78.07. The language of Rule 78.07 is as follows:

> In jury tried cases ... allegations of error to be preserved for appellate review *must* be included in a motion for a new trial except that questions of jurisdiction over the subject matter, questions as to the sufficiency of the pleadings to state a claim or defense, and questions authorized by Rule 72.01 [motions for directed verdict and judgment notwithstanding the verdict] to be presented in motions for judgment need not be included in a motion for new trial. Where definite objections or requests were made during the trial in accordance with Rule 78.09, including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient.

■ Appellant does not contend that he expressly stated the exclusion of prior crimes at neighboring businesses as a point of error in his motion for new trial. Instead, appellant claims that the issue of crimes on neighboring properties was one of the bases on which the trial court ruled Officer Chrisman could not testify, therefore the paragraph in appellant's motion for new trial addressing Chrisman's testimony is sufficient to preserve the issue for appellate review. The paragraph in appellant's motion for new trial states the following:

> The Court erred in excluding the testimony of Kansas City, Missouri, police officer Gary Chrisman. [Appellant] made an offer of proof that officer Chrisman has been

employed as a part-time security guard since 1985 at the Smokestack Restaurant, an establishment across the street from the Hickman Mill's McDonald's Restaurant. Officer Chrisman's testimony would have established that the Smokestack Restaurant is substantially similar to the [McDonald's] Restaurant, including location, traffic access roads, manner in which customers patronize the restaurants, and cash handling procedures. Officer Chrisman then would have testified that since he began his employment as an armed security guard at the Smokestack Restaurant in 1985, there has not been a single armed robbery of that restaurant. Officer Chrisman's testimony would have established that armed security guards were an effective deterrent to violent criminal activity on this substantially similar business property located across from the Hickman Mills McDonald's Restaurant.

In appellant's exhaustive motion for new trial, there is no mention of any testimony from Officer Chrisman regarding crimes on neighboring properties. There is no "general statement" of error regarding exclusion of evidence of prior crimes at neighboring businesses. The paragraph appellant points to as preserving the issue for review does not preserve this specific issue, though it is sufficient to preserve other points of error. The paragraph deals with testimony regarding the effectiveness of a security guard at a nearby restaurant, not actual prior crimes at neighboring facilities. If appellant found the issue of exclusion of evidence of prior crime on neighboring businesses to be important for review, he should have specifically included it in his motion for a new trial, as Rule 78.07 requires that he *must*.

██ We find that appellant did not preserve for appellate review the issue of the exclusion of prior crimes at neighboring businesses. Even if we found that appellant did preserve the issue for review, we cannot say that the evidence in question was relevant, or if it was, that the probative significance of the evidence outweighed its prejudicial effect so as to constitute an abuse of discretion, given the fact that evidence of crimes occurring at the 8304 Hickman Mills Drive McDonald's occurring from 1989 forward was admitted by the trial court. The issue of crime in the neighborhood and at the premises in question was before the jury. Point denied.

### B. *Prior Crimes on the Premises*

At trial, appellant presented evidence of extensive criminal activity at the 8304 Hickman Mills Drive facility dating back as far as 1987, offering ten police reports as exhibits. The reports showed ten violent crimes on the premises between 1987 and 1989. The trial court refused to permit evidence of crimes occurring on the premises prior to 1989, stating that a reasonable cutoff period was January of 1989, two years, seven months, and twenty-three days prior to the shooting of appellant.

██ A defendant generally does not have a duty to protect an invitee, such as appellant, from a deliberate criminal act of an unknown third person. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988). A duty arises to take reasonable measures to protect an invitee from deliberate criminal attacks by unidentified persons when "special facts and circumstances" are shown to exist. *Id.* The "special facts and circumstances" exception encompasses two possible theories of liability: (1) an intentional infliction of injury by known and identifiable third persons; and (2) frequent and recent occurrences of violent crime against persons on the premises by unknown assailants. *Thiele v. Rieter*, 838 S.W.2d 441, 443 (Mo.App.1992). To state a cause of action for the third-party criminal assault by unknown persons against him, appellant must prove that Webb had a duty to protect invitees from criminal attacks by unknown persons due to circumstances which put Webb on notice that invitees may be at risk of violent, criminal assaults. *See Madden*, 758 S.W.2d at 62. The touchstone for the creation of this duty is foreseeability; the duty arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Pickle v. Denny's Restaurant, Inc.*, 763 S.W.2d 678, 681 (Mo.App.1988).

The case at bar is similar to the *Pickle* case in many ways. In *Pickle*, the plaintiff was shot in the parking lot of the defendant restaurant after applying for a job. At trial, plaintiff sought to present evidence of thirteen prior crimes on the premises. The trial court admitted evidence of nine crimes which occurred over a period of two years and three months prior to the incident involving the plaintiff. In discussing the exclusion of the four other crimes, the court examined the nature of the crimes and concluded that the incidents complained of were merely cumulative and of little, if any, additional probative value in determining whether the incident involving plaintiff was foreseeable. *Pickle*, 763 S.W.2d at 681–82.

The incident presented in the case at bar is a shooting after an attempted robbery or theft from appellant on the parking lot of the premises operated by Webb and owned by McDonald's. The trial court allowed testimony from appellant regarding armed robberies that occurred at the 8304 Hickman Mills Drive McDonald's on December 15, 1990, February 23, 1991, and June 21, 1991. The trial court excluded evidence of ten armed robberies, none of which involved an assault in the parking lot as this case presents. Although both parties spend considerable space debating whether Missouri courts have adopted a "two year rule" with regard to the admission into evidence of prior crimes on the premises, we need not decide whether such a rule exists.[3] Based on the nature of the crimes excluded by the court, it is apparent that they would constitute merely cumulative evidence of little probative value, much like the circumstances in *Pickle*.

Further, Webb did not become the franchise holder of the 8304 Hickman Mills Drive restaurant until December 8, 1990. Prior to this time, Webb was associated with McDonald's restaurants at 2804 Prospect and 5901 Troost in Kansas City, Missouri, not the Hickman Mills restaurant. This was a relevant consideration in excluding crimes occurring prior to 1989 under the circumstances of this case.

Finally, appellant contends that while the evidence of prior crimes may not be admissible to establish a duty on the part of Webb, the evidence was admissible to show the level of care required by Webb once it was shown that he had assumed the duty to provide safety to an invitee. Appellant further argues that there was evidence to show that Webb assumed such a duty as indicated by testimony stating that he implemented numerous security devices and measures, short of hiring a security guard, after the 1990 and 1991 robberies. This amounts to nothing more than a game of semantics played by appellant. What appellant fails to realize is that crimes occurring prior to Webb's assuming an interest in the Hickman Mills Drive restaurant as a franchise holder are of no more than cumulative value in assessing whether Webb had complied with the level of care associated with the alleged assumed duty. The jury had sufficient evidence of prior crimes on the premises before it to make a fair and informed finding on the issue of whether Webb had a duty to protect invitees from criminal acts and whether he complied with such duty if it was found to exist.

The trial court did not abuse its discretion in excluding evidence of prior crimes on the premises that occurred before January 1989. Point denied.

### C. Exclusion of the Prior Owner's "Free Meals for Police Officers" Program

Prior to Webb's management of the 8304 Hickman Mills Drive restaurant, David Engelke operated the restaurant as a McDonald's licensee and provided free meals to Kansas City police officers. Upon taking over the restaurant, Webb, in his deposition, stated that he "cut [the policy] out immediately" because he "didn't think it made very good business sense . . . to have to give them

---

3. Missouri case law requires similar *recent* events of violent crime against persons on the premises committed by unknown assailants. *Thiele v. Rieter*, 838 S.W.2d 441, 443 (Mo.App.1992); *Faheen v. City Parking Corp.*, 734 S.W.2d 270, 273–74 (Mo.App.1987). Respondents argued that crimes prior to 1989 were too remote to be relevant, and the trial court indicated that remoteness was a substantial factor in its decision. Contrary to appellant's position, however, remoteness was not the only factor involved in the trial court's decision.

free food to do their job ...; [Engelke] was giving the police officers free food, but was charging their employees half price, and that didn't make sense...." Before opening statements, Webb objected to appellant's counsel mentioning to the jury that Engelke gave free meals to the police. The trial court sustained this motion, noting that:

> The other issue about the feeding of the officers, I don't believe that issue is raised in the pleadings. The issues as I understand it are that they should have had a security guard employed there, or outside surveillance cameras. Those two issues are the only two that have been plead [sic] as far as I know, or as far as I can recall, so I would sustain the objections to any reference to the policy of feeding police officers.

Appellant desired to offer this evidence on the issue of the security measures in place prior to Webb taking over the restaurant, his modification of the existing security measures, and causation. After appellant made an offer of proof regarding the admission of the free meals policy evidence, the trial court stood by its ruling excluding such evidence because it was outside the pleadings.

While it is true that appellant's Amended Petition did not allege that Webb was under any duty or obligation to furnish free meals to the police or that Webb failed to provide adequate security because he did not provide free meals to the police, the Amended Petition does contain the following paragraphs:

31. Defendant Lewis Webb had a duty to make the premises of the 8304 Hickman Mills Drive McDonald's safe for business invitees such as plaintiff by implementing security measures to prevent injury caused by the criminal acts of third persons, including without limitation, acts of armed robbery.

37. Defendant McDonald's had a duty to make the premises of the 8304 Hickman Mills Drive McDonald's safe for business invitees, such as plaintiff, by implementing security measures to prevent injury caused by the criminal acts of third persons, including without limitation, acts of armed robbery.

The initial question for this court on review is whether these paragraphs are sufficient to bring the issue of the free meals policy within the pleadings.

 Missouri law has long required fact pleading; however, fact pleading only requires that a party plead ultimate facts. *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo. banc 1976); *First Nat'l Bank of Ft. Smith v. Kansas City S. Ry. Co.,* 865 S.W.2d 719, 728 (Mo.App.1993). Evidentiary facts supporting ultimate facts are not required to be pled. *Id.* After reviewing appellant's petition, we believe that paragraphs 31 and 37, alleging a duty on the part of respondents to implement security measures, was sufficient to bring the free meals policy within the pleadings as Webb himself admitted that the prior owner considered the free meals policy a security measure.

 Though we believe the free meals policy was within the pleadings, that does not in and of itself require us to reverse the trial courts ruling and remand this cause for new trial. If a ruling regarding the admission or exclusion of evidence is correct for any reason, it will be affirmed regardless of the reason articulated by the trial judge. *First Nat'l Bank of Ft. Smith,* 865 S.W.2d at 738.

 Respondents contend that appellant's offer of proof on the free meals issue was not sufficient to establish its admissibility. An offer of proof must be made at the time of the objection and must show: (1) what the evidence will be; (2) its purpose and object; and (3) all facts necessary to establish admissibility. *Anderson v. Wittmeyer,* 895 S.W.2d 595, 601 (Mo.App.1995). Further, the facts necessary to establish admissibility must be specific and in sufficient detail to show the relevance and materiality of the evidence in order to preserve the matter for appeal. *Id.*

Appellant's offer of proof included the following monologue:

> [Appellant] would make an offer of proof. The offer of proof will be made on the subject of the free meal policy of [Engelke] to police officers, and the abandonment or modification of that policy. It's relevant to the issue of what security measures were

in place before [Webb] took over the restaurant, and his modification or abandonment of the security measure; and its also relevant on the causation issue, because in '89 or '90 the record shows there was [sic] no armed robberies on the restaurant, and there were armed robberies afterwards. Our experts have testified than an armed guard, either a uniformed officer or private security guard in uniform, was the proper security for this restaurant. I think that the jury can listen to the effect of this policy and determine, based upon the facts, with regard to the frequency of the armed robberies for themselves, the effect of having police officers on this particular property. My offer of proof will be in the form of questions and answers of [Webb] given in his deposition....

Appellant's counsel then went on to read the following questions and answers from the deposition of Webb as part of his offer of proof:

Q: Before you took over as operator of the 8304 Hickman Mills Drive restaurant, did you have an opportunity to meet with David Engelke?

A: I talked to him a little bit.

Q: Did he talk with you about what actions he had taken while he was operator for the purpose of security?

A: Yeah.

Q: What did Mr. Engelke tell you were actions that he took that were intended to make the restaurant safe from crime for the employees and customers?

A: He was giving the Police Department free food.

. . . . .

Q: Did you continue this practice?

A: Cut it out immediately.

Q: Did he tell you why he was giving the Police Department free meals?

A: If I'm not mistaken, I think he was doing it to keep them coming in there a lot.

Q: Did he say why he wanted the police officers coming into the restaurant a lot?

A: Not really.

. . . . .

Q: Why did you decide to cut out free food for police officers?

A: I didn't think it made very good business sense for me to have to give them free food to do their job. [Engelke] was giving the police officers free food, but was charging their employees half price; and that didn't make sense to me.

. . . . .

Q: Did he ever offer an opinion about whether he thought having the police officers come around because of his free food kept down the armed robberies or prevented them?

A: Probably kept down a lot of them from the neighborhood guys.

That concluded the testimony presented by appellant from Webb's deposition. Appellant's counsel went on to close the offer of proof with another monologue:

I believe the door is open [to the admission of the evidence] because in the examination of [Webb] and the examination of [appellant's] expert, the defense is clearly trying to portray all of these security measures—and I anticipate they are going to argue that the security measures that were present were adequate, and sufficient and reasonable under the circumstances. And under [Engelke] we had one additional security measure taking place that was part of this whole package of security measures during 1989 and 1990 when there were no armed robberies. And that was the meals policy for the police officers, causing uniformed police officers to come in. And I will also be making proof with a manager and employees of the restaurant on the direct effect of the fact that six, seven, eight, nine police officers a day were coming in. At night they would sit out in front of the restaurant and write up their reports. And when this policy was canceled, they stopped coming in, period.

The evidence presented was that the free meals policy was implemented to attract police to the restaurant. There was no testimony to equate the free meals policy with the presence of an armed guard on the premises. Appellant's expert did testify that there

should have been an armed guard on the premises after dark before closing. However, there was no testimony from appellant's experts that the free meals policy was a necessary security measure or otherwise a consideration in order to provide safety to the restaurant's customers.

■■■ Even if we were to consider appellant's offer of proof sufficient, we nonetheless do not find the exclusion of evidence of the free meals policy to have been an abuse of discretion. The question at issue was whether respondents should have provided an armed security guard on the premises. This is not the same as providing free meals to the police. Under the circumstances presented here, reasonable persons can differ as to the admissibility of the free meals policy and we cannot say that the trial court abused its discretion in excluding evidence of the free meals policy.

Point denied.

### D. *Exclusion of Evidence of the Presence of Prostitutes on the Premises*

During trial, appellant inquired into Webb's rationale for not providing a security guard at the 8304 Hickman Mills restaurant. Webb responded that he did not believe in them and refused to have them in his store, partly because he wanted to run a family oriented business and did not think that a person would like to take their family to eat at a restaurant "where a guard has to stand over you with a gun on his hip." Appellant then sought to introduce testimony from Ronald Havens that he had been propositioned by a prostitute in the parking lot of the 8304 Hickman Mills restaurant on his way to work to show that Webb's "family oriented business" rationale for not hiring a security guard was contrived. The trial court refused to admit this evidence.

■■■ With regard to the relevance of the evidence of the alleged propositioning of Havens by a prostitute in order to show a duty to provide security measures on the part of Webb, the trial judge did not commit error in excluding the testimony. As stated in section B above, the "special facts and circumstances" exception to the general rule

of non-liability of an business owner or operator to a business invitee for the acts of an unknown third party requires "[p]rior, specific incidents of *violent* crime on the defendant's premises that are significantly numerous and recent." *Faheen v. City Parking Corp.,* 734 S.W.2d 270, 273–74 (Mo.App.1987). The alleged propositioning of Havens is not a violent crime and not relevant to the issue of whether Webb had a duty to provide security measures to protect appellant.

■■■ Appellant also contends the evidence of the presence of prostitutes at the 8304 Hickman Mills Drive restaurant and the alleged propositioning of Havens was relevant to show Webb's knowledge of criminal activity in general on the premises. Appellant failed, however, to provide evidence indicating that Webb knew of the alleged propositioning of Havens or that prostitutes frequented or carried on parts of their transactions at the restaurant. The fact that Havens had seen some "scraggly looking women" come into the restaurant as customers is wholly irrelevant to the matter before the court. Irrelevant and incompetent evidence should not be placed before a jury under the guise that it impeaches or discredits a witness. *Brug v. Manufacturers Bank & Trust Co.,* 461 S.W.2d 269, 276 (Mo. banc 1970). The trial court did not abuse its discretion in excluding this evidence.

Point denied.

### E. *Exclusion of Webb's Statements to Havens Regarding the Hiring of a Security Guard*

At trial, appellant made an offer of proof consisting of testimony from Ronald Havens to the effect that he raised the issue of security guards at the restaurant to Webb at a regularly monthly employee meeting shortly after one of the armed robberies in 1991. Havens testified as follows:

Q: Now in the managerial staff meeting subsequent to February 23, 1991, was there any discussion on the subject of a security guard?

A: I brought the issues up. It was still bothering me from being robbed the Saturday before. Yes.

Q: Did you say anything to Mr. Webb at that meeting about a security guard?

A: Yes.

Q: What did you say to him?

A: I asked if we were going to get any type of security put in, a security guard or—

Q: What did he reply to you?

A: He said he was trying to do as much as he could.

▮▮▮ Appellant sought to admit the testimony of Webb's statements through Havens as an admission of a party opponent. To be admissible as an admission of a party opponent, a statement (1) must be a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts; (2) the matter acknowledged must be relevant to material issues of fact in the case; and (3) the facts acknowledged are unfavorable to or inconsistent with the position taken by the party-opponent. *Around the World Importing, Inc. v. Mercantile Trust Co.*, 795 S.W.2d 85, 89 (Mo.App.1990).

▮▮▮ Appellant claims that Webb's statements to Havens constitute a conscious or voluntary acknowledgment of the fact that a security guard was needed and/or would be effective in deterring violent criminal conduct. Having reviewed Webb's statement that he "would do as much as he could" in response to Havens' question asking if Webb was going to get "any type of security put in," we find that statement to be ambiguous at best, and a stretch of the bounds of reasonable interpretation to their limit at worst, as to whether Webb intended to hire a security guard or thought a security would be effective in deterring crime. Further, under cross-examination Havens agreed that Webb never said he would obtain a security guard for McDonald's and made no statements to Havens that a security guard would be effective.

▮▮▮ The trial court must determine relevance and alleged verbal admissions are considered to be the weakest and most unsatisfactory form of evidence. *Kelly by Kelly v. Jackson*, 798 S.W.2d 699 (Mo. banc 1990). The statements of Webb that appellant seeks to introduce do not contradict Webb's state-

ment at trial except under appellant's own strained interpretation—an interpretation that is not supported by the further testimony of the witness through whom appellant sought to introduce the statements. No abuse of discretion was committed by the trial court in excluding the statements.

Point denied.

F. *Exclusion of Testimony from Appellant's Experts Regarding the Target of the Assailants and the Effectiveness of a Security Guard*

Appellant called Major John Coleman, a police officer, and Russell Colling as security experts at trial. Both gentlemen testified about security measures in general, focusing especially on the use and placement of armed security guards. Both witnesses were allowed to express their opinion that the security measures at the 8304 Hickman Mills Drive restaurant were not adequate because Webb had not provided an armed security guard (though the experts differed on the hours they believed an armed guard was necessary) and that a visible, armed guard should have been present.

Appellant then sought to introduce Coleman's opinion that the unknown assailants who attacked appellant were on the property to rob the restaurant, not steal appellant's car. The trial court refused to allow this opinion on the basis that it invaded the province of the jury.

Appellant also sought to introduce opinions from both experts as to whether the presence of an armed security guard on the night in question would have prevented the attack on appellant. The trial court also refused to allow these opinions on the basis that they invaded the province of the jury.

▮▮▮ Under RSMo § 490.065, the determination of the admissibility of expert testimony is left to the trial court's discretion. *Ryan v. Parker*, 812 S.W.2d 190, 194 (Mo. App.1991). A trial court does not usually commit reversible error by mere exclusion of expert testimony, even if the offered testimony is relevant and admissible. *Inman v. Bi–*

*State Dev. Agency,* 849 S.W.2d 681, 683 (Mo. App.1993).

■ Given the evidence that was already before the jury, the trial court determined that expert testimony on the issues of the robbers' intent and whether the presence of a security guard would have prevented the attack on appellant would not aid the jury. We agree with the trial court. First, we fail to see the relevance of testimony regarding the intended target of the assailants. Second, the jury was perfectly capable of reaching intelligent conclusions on the issues of the intent of the robbers and the effectiveness of a security guard on the night in question based on the evidence before them. Our position is supported not only by the record, but by precedent in the form of the decision in *Pickle* that was discussed earlier.

In *Pickle,* the plaintiff alleged that the restaurant owner failed to provide adequate security in the restaurant parking lot which led to plaintiff being attacked in the lot. The plaintiff alleged that the trial court committed error when it excluded *all* expert testimony on the subject of premises security on the basis that premises security was within the common knowledge of the average lay juror. The Eastern District Court of Appeals determined that the trial court's ruling did not constitute an abuse of discretion, stating:

> Contrary to plaintiff's assertions on appeal, methods necessary to secure defendant's parking lot need not be sophisticated. Additionally, defendant was not required to provide the best security plan known to mankind; instead defendant was held to a standard of "ordinary care".... That is to say, the care that an ordinarily careful and prudent person would use under the same or similar circumstances.

*Pickle,* 763 S.W.2d at 683. The sound logic of the *Pickle* court is equally applicable to the case at bar, where respondents were also held to the "ordinary care" standard of conduct.

Given the latitude of the trial court in this matter compared to the trial court in *Pickle,* we cannot conclude that an abuse of discretion occurred when expert testimony from Coleman and Colling was merely limited, rather than completely excluded.

Point denied.

G. *Exclusion of Testimony Regarding the Effectiveness of Security Guards at a Nearby Restaurant*

Appellant sought to introduce testimony from Officer Gary Chrisman, who served as a part-time security officer at the Smokestack Restaurant, that no armed robberies occurred at the Smokestack during 1989, 1990, or 1991 while armed security guards were on the premises in the evenings. Appellant purported to offer this evidence not to establish a duty on the part of Webb, but to show causation in the form of an illustration of the deterrent effect of the presence of an armed security guard.

■ Evidence of similar happenings is generally inadmissible to prove negligence or to establish the standard of care. *Wehrkamp v. Watkins Motor Lines, Inc.,* 436 S.W.2d 698, 709–11 (Mo.1969). However, what others do is relevant and admissible if the circumstances and conditions are "substantially," although not "precisely," similar. *Broadview Leasing Co. v. Cape Cent. Airways, Inc.,* 539 S.W.2d 553, 563 (Mo.App. 1976). In order for appellant to establish the admissibility of the evidence in question, he was required to demonstrate that the 8304 Hickman Mills Drive McDonald's and the Smokestack restaurant that was one block up and across the street were substantially similar.

■ The statements of the parties diverge after each agree that both McDonald's and the Smokestack are restaurants. Appellant contends that the Smokestack is a largely cash business, near the 8304 Hickman Mills Drive McDonald's, and that people of all ages, including families, dine at the Smokestack. Respondents contend that the Smokestack differs from McDonald's in that it is a "sit down" restaurant, serves alcohol, that many of its customers pay using credit cards, and that it formerly abutted a bar and still abuts a hotel where questionable events may occur. The trial court determined that the two restaurants were not substantially

similar and refused to allow the evidence, considering it a collateral issue.

Clearly, the evidence does indicate some similarity between the restaurants. However, as stated earlier, if reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Richardson*, 863 S.W.2d at 881; *Anglim v. Missouri Pacific Railroad Co.*, 832 S.W.2d 298, 303 (Mo. banc), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). We cannot say the trial court abused its discretion in this matter, especially in light of the decision in *Brown v. National Super Markets, Inc.*, 731 S.W.2d 291 (Mo.App.1987).

In *Brown*, the plaintiff was assaulted in a supermarket parking lot by an unknown assailant. At trial, she offered evidence that a bank parking lot directly across a side street from the market's lot had been crime free for two years immediately prior to the assault and that a security guard patrolled the bank lot during the two-year period. Like the appellant in this case, the plaintiff in *Brown* argued that the evidence of the deterrent effect of the presence of the security guard on the neighboring lot was relevant on the issue of causation. 731 S.W.2d at 295. Although plaintiff argued that the essential similarities of the two parking lots justified admission of the evidence, the court determined that the trial court did not abuse its discretion in excluding the evidence. *Id.* Likewise, because of the even less similar circumstances presented by the two restaurants in question, we find no abuse of discretion in the exclusion of Chrisman's testimony by the trial court. Point denied.

### H. *Cumulative Error*

Appellant's eighth point alleges that even if the previously alleged errors did not individually merit reversal of the trial court decision and remand for new trial, the cumulative effect of the collection of errors requires reversal. *See State v. Allen*, 363 Mo. 467, 251 S.W.2d 659 (1952). Though appellant's voluminous briefs to this court are littered with references to the alleged "illogical" and "arbitrary" decisions of the trial court with regard to the exclusion of the evidence discussed in preceding sections, we have concluded that the trial court did not abuse its discretion in any manner in excluding the evidence. The trial court's decisions were logical and well reasoned. Because we have found no error on the part of the trial court, there consequently can by no cumulative error on which to base a reversal and remand for new trial.

Point denied.

## II. *INSTRUCTIONAL ERRORS*

■■■■■ Appellant questions the trial court's decision in refusing to submit three not-in-MAI instructions to the jury. Where an MAI instruction is available, its use is mandatory. *P.S. & R.S. v. Psychiatric Coverage Ltd.*, 887 S.W.2d 622, 626 (Mo.App. 1994). Not all factual situations are covered by MAI instructions, however. *Id.* The ultimate test of a non-MAI instruction is whether it follows the substantive law and can be readily understood by the jurors. *Footwear Unlimited, Inc. v. Katzenberg*, 683 S.W.2d 291, 296 (Mo.App.1984). As part of this requirement, the instruction authorizing the jury to return a verdict for a party must require the finding of all essential fact issues necessary to establish the legal proposition on which the right to the verdict is based and the verdict directing instruction must require the finding of all facts disputed or not conceded which are necessary to support the verdict. *Gaffner v. Alexander*, 331 S.W.2d 622, 627 (Mo.1960); *Kettler v. Hampton*, 365 S.W.2d 518, 522 (Mo.1963); *Anthony v. Jennings*, 368 S.W.2d 533, 538 (Mo.App.1963). Each element of the verdict directing instruction must be supported by substantial evidence. *Cowan v. Perryman*, 740 S.W.2d 303, 304 (Mo.App.1987). These principles guide our review of appellant's claims of instructional error.

### A. *Instructions Regarding the Liability of McDonald's as a Co–Possessor of the Premises*

Appellant argued that McDonald's was liable for his injuries as either an owner or co-possessor of the property at 8304 Hickman Mills Drive and attempted to submit his case

against McDonald's to the jury through the following instructions:

### Instruction "D"

The term "co-possessor" as used in these instructions means a person who owns land and whose involvement in over seeing the activities on it is substantial.

### Instruction "E"

Your verdict must be for plaintiff and against defendant McDonald's Corporation if you believe:

First, defendant McDonald's Corporation was a co-possessor with defendant Lewis Webb of the McDonald's Restaurant located at 8304 Hickman Mills Drive; and,

Second, on August 23, 1991, there was a danger that a customer might be shot on the Restaurant's property lot and as a result, the Restaurant's property lot was not reasonably safe; and,

Third, defendant McDonald's Corporation knew or by using ordinary care should have known of this condition; and,

Fourth, defendant McDonald's Corporation failed to use ordinary care to make the Restaurant's parking lot reasonably safe; and,

Fifth, as a direct result of such failure, plaintiff sustained damage.

Appellant contends that the submitted instructions properly reflect the substantive law of Missouri for two reasons: (1) McDonald's owed a duty to appellant under § 344 of the Restatement (Second) of Torts based on its status as owner of the real property on which the 8304 Hickman Mills Drive restaurant sits; and (2) McDonald's is a co-possessor of the 8304 Hickman Mills

Drive restaurant because of the standards imposed by McDonald's with respect to the operation of the franchise.

■■■■ While both parties are correct in stating that Missouri cases have used terms such as owner, landowner, business owner, tenant, operator, and others loosely or interchangeably with regard to the § 344 duty to make premises safe from violent third party criminal activities, section 344 uses the term *"possessor"* of land in defining potential liability. A "possessor of land" is defined as a person who is in occupation of the land with intent to control it. *Restatement (Second) of Torts* § 328E(a) (1965). Ownership is not a requirement for possession of the land in order to establish liability under sections 328E and 344 of the Restatement. Further, the language of section 328E indicates that ownership of the premises alone is not sufficient to show the requisite possession and control of the premises required of the possessor to establish liability under section 344.

■■■■ Appellant's proposed instructions based on his contention that because McDonald's owned the land on which the 8304 Hickman Mills Drive restaurant sat and derived economic benefit from operation of the restaurant, McDonald's was liable to him under section 344 is not supported by Missouri law. As adopted in *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59 (Mo. banc 1988), section 344 imposes a duty upon "possessors" of land without regard to ownership. With regard to appellant's "ownership" argument, this alone is sufficient to render proposed Instructions D and E invalid because they are inaccurate statements of the law, as the proposed instructions require ownership as an element of possession.[4]

With regard to appellant's claim that the instructions were proper because McDonald's

---

**4.** Even if appellant's Instruction D was not fatally flawed by the ownership requirement, appellant's argument would fail. Appellant must establish that McDonald's had the requisite intent to control the premises to qualify as a "possessor," and he cannot do so. Though Missouri courts have addressed this issue in the contexts of a landlord-tenant relationship and a business operator-lessee relationship, we can find no Missouri case addressing the liability of a franchisor in a franchisor-franchisee relationship under section 344. *See, e.g., Conroy v. Solon Gershman, Inc.,* 767 S.W.2d 381 (Mo.App.1989); *Brown,* 731 S.W.2d 291. Courts in other jurisdictions

have addressed the issue of section 344 liability in the context of a franchisor-franchisee relationship and determined that the franchisor did not retain sufficient control over the property and daily operation of the restaurant, and that even though a franchisor exercises control over its franchisees in the form of stringent requirements for operating the franchise with regard to standards of quality, cleanliness and service, and the monitoring of profitability, such requirements are distinguishable from having actual control over the subject premises. *See Hoffnagle v. McDonald's Corporation,* 522 N.W.2d 808 (Iowa

was a co-possessor of the restaurant, Instructions D and E are inaccurate and misleading for the same reason: ownership is not an element of co-possession. Further, proposed Instruction D, purportedly based on the definition of a "possessor" in section 328E of the Restatement,[5] is not an accurate paraphrase of that section. Additionally, a key element of co-possession is control or the right to control the premises; in this case, specifically, the right to control security issues is key to appellant's case. In order for proposed Instruction E to be a proper verdict directing instruction, it must contain a paragraph requiring a finding that McDonald's controlled, or had the right to control, security measures at the 8304 Hickman Mills Drive restaurant.[6] For these reasons, proposed Instructions D and E were improperly vague and confusing, do not require the finding of all essential fact issues necessary to establish the legal proposition on which the right to verdict was based, and do not accurately reflect the law as it relates to appellant's claim that McDonald's was a co-possessor of the 8304 Hickman Mills drive restaurant subject to liability for his injuries. Point denied.

B. *Instructions Regarding McDonald's Liability Based on an Alleged Negligent Provision of an Assumed Duty*

Appellant claims that his petition set forth a cause of action under Restatement (Second) of Torts § 324A, and that proposed Instruction F accurately presented this claim and should have been submitted to the jury. Restatement (Second) of Torts § 324A reads:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Appellant claims that based on section 324A, he constructed proposed Instruction F, which reads:

> Your verdict must be for plaintiff and against defendant McDonald's Corporation if you believe:
>
> First, defendant McDonald's Corporation undertook to have and [sic] effective security program at all McDonald's Restaurants, including the property located at 8304 Hickman Mills Drive; and

1994); *Dalzell v. McDonald's Corporation,* —— A.D.2d ——, 632 N.Y.S.2d 635 (1995); *Little v. Howard Johnson Co.,* 183 Mich.App. 675, 455 N.W.2d 390 (1990); *Hayman v. Ramada Inn, Inc.,* 86 N.C.App. 274, 357 S.E.2d 394 (1987); *see generally* Phoebe Carter, Annotation, *Franchisor's Tort Liability for Injuries Allegedly Caused by Assault or Other Criminal Activity on or Near Franchise Premises,* 2 A.L.R. 5th 369 (1992) (many of the cases in the annotation deal with whether the cause of action alleged survived a motion for summary judgment, whereas appellant was afforded the opportunity to have a full trial of his claims in the case at bar).

5. Restatement (Second) of Torts § 328E states:

> A possessor of land is
> (a) a person who is in occupation of the land with intent to control it or
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

6. McDonald's also contends that no evidence was presented to support such a contention even if it was included in the jury instruction. Further, the issue of an agency relationship between Lewis Webb and McDonald's was submitted to the jury, with the jury concluding that no such agency existed. The finding of no agency relationship was not challenged by appellant.

Appellant contends that terms of the franchise agreement establish the requisite control for co-possession of the property. While it is true that Webb had to operate the restaurant in a manner that conformed to standards of quality, cleanliness, and service set forth by McDonald's, the operator's lease provides that Webb, the tenant, occupied the land and was required to pay utilities, maintain the property, maintain insurance on the property, and was silent as to security issues.

Second, defendant McDonald's Corporation on August 23, 1991, failed to have an armed security guard during the nighttime hours of operation on the Restaurant's parking lot; and

Third, defendant McDonald's Corporation was thereby negligent; and

Fourth, as a direct result of such negligence, plaintiff sustained damage.

■ Missouri courts have recognized that a duty may be assumed or undertaken, and when so assumed, a defendant must exercise reasonable care in carrying out the duty. *Keenan v. Miriam Foundation,* 784 S.W.2d 298, 303 (Mo.App.1990) (*citing Wolfmeyer v. Otis Elevator Co.,* 262 S.W.2d 18, 23 (Mo. 1953)). Such a duty is reflected in the language of section 324A of the Restatement (Second) of Torts.

■ Essential to any proposed instruction based on 324A is that it accurately state the law. Though the parties debate whether the evidence supported the giving of proposed Instruction F,[7] we need not address that issue in detail as it is evident that Instruction F does not accurately state the law based on section 324A of the Restatement (Second) of Torts.

Proposed Instruction F does not require a finding that McDonald's assumed a duty to protect appellant; instead, it assumes that undertaking to have an effective security program at all McDonald's restaurants is equivalent to the assumption of such a duty, a position unsupported by Missouri case law. *See Miller v. South County Ctr.,* 857 S.W.2d 507, 512–13 (Mo.App.1993); *Thiele v. Rieter,* 838 S.W.2d 441, 444 (Mo.App.1992). Further, proposed Instruction F also assumes

that the hiring of an armed security guard is the equivalent of an effective safety program rather than requiring a jury finding to that effect. Proposed Instruction F did not require the finding of all essential facts necessary to establish the proposition on which the right to verdict was based, and is vague, misleading, and an inaccurate statement of Missouri law. For these reasons, the trial court did not err in refusing to submit proposed Instruction F to the jury. Point denied.

We find that the trial court did not err in ruling on the evidentiary or instructional issues raised by appellant. The trial court is affirmed in all respects.

All concur.

---

7. Appellant claims he should have been allowed to submit the issue of McDonald's liability under Restatement 324A because substantial evidence at trial showed McDonald's: (1) instituted a system of restaurant management emphasizing safety for its patrons; (2) promoted safety at its restaurants to members of the public through advertisements and other representations; and (3) disseminated security bulletins to both corporate and franchisee-operated restaurants, including the restaurant in question.

McDonald's claims that an express assurance of safety is required to assume the duty alleged by appellant, relying on *Miller v. South County Center,* 857 S.W.2d 507, 512–13 (Mo.App.1993)

and *Thiele v. Rieter,* 838 S.W.2d 441, 444 (Mo. App.1992), and that no express assurances of safety were made by McDonald's. Further, McDonald's contends that there was no evidence that appellant relied on any alleged express assurance by McDonald's.

Based upon our review of the record before us, we believe the evidence supports McDonald's position, and that appellant's arguments do not support submission of his case to the jury under a Restatement 324A theory, as there is no express assurance of safety which appellant can point to which gave rise to a duty to protect him on the part of McDonald's.